# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **JARROD COLE BOWERS** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12CV00002 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Ginger J. Largen, Morefield & Largen, P.L.C., Abingdon, Virginia, for Plaintiff; Nora Koch, Acting Regional Chief Counsel, Region III, Heather Benderson, Assistant Regional Counsel, and Robert Kosman, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Jarrod C. Bowers filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for disability insurance benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§

401-434, 1381-1383f (West 2003 & Supp. 2012). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Bowers protectively applied for disabilityI benefits on February 20, 2009, claiming disability since July 25, 2008, due to leg and foot problems, depression, memory loss, trauma to his face and hips, and panic attacks. His application was denied initially and upon reconsideration. On May 5, 2011, an Administrative Law Judge ("ALJ") held a hearing and subsequently denied the plaintiff's claim for disability on June 3, 2011. The Appeals Council denied the plaintiff's request for review on December 20, 2011. This action followed.

II

Bowers was thirty-one years old at the time of the ALJ's decision, a younger individual under the regulations. *See*, 20 C.F.R. § 404.1563(c) (2011). Bowers has a high school education and past work experience as a plastic fabricator, forklift driver, warehouse worker, scrap yard laborer/material handler, pallet maker and dye castor. (R. at 55, 194.) Bowers reported that a daily routine consists of waking up early, preparing breakfast, taking a shower, getting dressed and helping his father feed the cows. (R. at 475.) He reported that he spent most of his time with his girlfriend, and on occasion, went to church, played in his girlfriend's pool or went fishing. (*Id.*) He reported that he was able to manage his money and

2

medication. (*Id.*) Bowers testified that he last worked in December 2008, when he was fired from his job and was unsuccessful in his subsequent job search. (R. at 33.)

The medical records reflect that Bowers was involved in an All Terrain Vehicle ("ATV") accident on July 25, 2008, in which he sustained lacerations to his scalp, face and left knee, and abrasions to his left shoulder, arm and elbow, low back and both knees. (R. at 277-83.) X rays of Bowers' chest, pelvis and left knee were normal. (*Id.*) Bowers claims that the accident also resulted in ongoing headaches, memory loss, problems with his left leg and right foot, and extreme mood swings. (R. at 39-40, 49, 51-52.)

The plaintiff sought treatment for a number of physical ailments after his accident, including headaches, hand pain, foot pain, hip pain and back pain. On July 29, 2008, the plaintiff sought treatment in the emergency room, complaining of hand pain, where he was diagnosed with cellulitis and was prescribed Keflex and Percocet. (R. at 311.) On December 30, 2008, the plaintiff sought treatment at Stone Mountain Health Services for headaches, right hip pain and low back pain. (R. at 357-58.) X-rays of Bowers' hips and lumbar spine taken on January 5, 2009, were normal. (R. at 308-306-09). On January 23, 2009, the plaintiff complained of foot pain but reported that his foot had improved a few months later. (R. at 342, 606.) On September 15, 2009, the plaintiff sought treatment for headaches from

his primary care physician, who prescribed Phenergan. (R. at 463.) The primary care physician also indicated that the plaintiff should see a neurologist. (*Id.*) In March, an MRI of the plaintiff's brain was conducted, with normal results. (R. at 540.) On May 17, 2010, the plaintiff partially tore his medial cruciate ligament in his right knee after slipping and falling on a wet floor. (R. at 516-19.)

The plaintiff also sought treatment for mental impairments. On January 15, 2009, Bowers attended a behavioral health consultation at Stone Mountain Health Services. (R. at 404.) In his health consultation, Bowers indicated he had been diagnosed with bipolar disorder in the past. (*Id.*) Bowers continued attending counseling sessions at Stone Mountain Health services from January 2009 to June 2009 to seek help with managing stress. (R. at 329-42.)

On January 24, 2009, Bowers was brought to the emergency room of Johnson Memorial Hospital after he attacked his father. (R. at 295, 340.) A mental health examination taken at the emergency room indicated that the plaintiff's affect was calm; he was well-oriented; he was not a threat to himself or others; and he had no delusions or hallucinations. (R. at 296.) The plaintiff's discharge diagnosis was alcohol intoxication/alcohol abuse, and he was advised to follow up with a mental health provider for his bipolar disorder and alcoholism. (R. at 297.)

On October 8, 2009, Larry Merkel, M.D., Ph.D., of the University of Virginia Department of Psychiatric Medicine, evaluated Bowers and diagnosed him with mood and anxiety disorder due to head trauma and probable pre-morbid Cyclothemia. Dr. Merkel prescribed Depakote to treat Bowers' mental impairments. (R. at 453.) He assigned Bowers a Global Assessment of Function ("GAF") score of 45.[1] (*Id.*) Dr. Merkel treated the plaintiff again via telemedicine in October 2009 and December 2009, and increased his dosage of Depakote to address an increase in Bowers' reported panic attacks. (R. at 495.) Bowers told Dr. Merkel that his mood had improved, he was feeling less depressed and angry, and that Depakote was helping. (R. at 494.)

Kathy Jo Miller, M.Ed., a licensed psychological examiner, evaluated Bowers on December 10, 2009, and diagnosed Bowers with bipolar disorder and alcohol abuse. She assigned him a GAF score of 65, and noted that Bowers' ability to understand and remember were not significantly limited; his ability to sustain concentration and persistence were not significantly limited; his social

---

[1] A GAF score indicates an individual's overall level of functioning at the time of examination. It is made up of two components: symptom severity and social occupational functioning. A GAF score ranging from 61 to 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning; a GAF score ranging from 51 to 60 denotes functioning with moderate symptoms or moderate difficulty in social or occupational functioning; a GAF score ranging from 41 to 50 indicates functioning with serious symptoms or any serious impairment in social, occupational, or school functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32-34 (4th ed. 2000).

interaction was limited by irritability and anger, secondary to bipolar disorder; and his adaptation was not significantly limited. (R. 477-78.)

Mudhasi Bashir, M.D., a psychiatrist at the University of Virginia, examined Bowers on July 21, 2010, and diagnosed him with bipolar disorder 2, panic disorder with agoraphobia, post-traumatic stress disorder, and generalized anxiety disorder. (R. at 492.) He opined that Bowers should seek neurological testing and anger management counseling, and also noted that Bowers had missed several psychiatry appointments. (R. at 489.)

On March 10, 2011, Nelly Norrel, M.D., a psychiatrist, saw Bowers via telemedicine for medication management. (R. at 596.) She diagnosed him with bipolar 2 disorder and post-traumatic stress disorder, and assigned him a GAF score of 41-50, referencing Bowers' economic and occupational problems. (R. at 597.) She adjusted his medication regimen and discussed the importance of medication compliance, in response to the plaintiff's report that he had not been taking his prescribed medication. (*Id.*)

On April 11, 2009, Dr. Merkel completed an assessment of Bowers' ability to do work-related activities in light of his mental limitations. (R. at 607-08.) Dr. Merkel indicated on the form that Bowers had a fair ability to maintain personal appearance, relate predictably in social situations and demonstrate reliability. Dr. Merkel also indicated that Bowers had poor or no ability to behave in an

6

emotionally stable manner, and was impulsive, with poor attention and concentration. (*Id.*) Dr. Merkel offered no opinion about the plaintiff's ability to make occupational adjustments or performance adjustments. (*Id.*)

Based on the medical evidence in the record and the testimony presented at the hearing, the ALJ found that the plaintiff had the severe impairments of status post multiple lacerations/abrasions and post-concussion syndrome due to an ATV accident in July of 2008; status post rotator cuff surgery of the right upper extremity in 1997; slightly diminished bilateral hearing since infancy; bipolar/mood disorder; anxiety disorder; and intermittent alcohol abuse. (R. at 13-14.) The ALJ found that these impairments did not meet the listing requirements. (*Id.*) The ALJ found that the plaintiff has the residual functional capacity to perform a range of light and sedentary work; is able to understand, remember, and carry out short and simple instructions and maintain attention and concentration long enough for tasks at that level; and can take part in occasional interactions with others in the workplace. (R. at 16.) The vocational expert ("VE") testified that there existed a number of jobs in the national economy that someone with Bowers' residual functional capacity could perform. (R. at 22.) Relying on this testimony, the ALJ concluded that Bowers was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act. (R. at 22-23).

7

Bowers argues the ALJ's decision is not supported by substantial evidence. For the reasons below, I disagree.

III

The plaintiff bears the burden of proving that he is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing disability claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the

inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id*. at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Bowers contends that the ALJ's decision is not supported by substantial evidence. He presents three arguments.

First, the plaintiff contends that the ALJ failed to accord proper weight to the medical opinion of Dr. Merkel. (Pl.'s Br. 7.) The plaintiff argues that because Dr. Merkel was considered a treating source under 20 C.F.R. § 404.1502 (2012), his

opinion is entitled to controlling weight. (*Id.*) If the ALJ does not heavily weigh a treating physician's opinion, the ALJ must use a five-factor test that considers the length of the treatment relationship; the nature and extent of the treatment relationship; the supportability of the treating source's opinion; the consistency of the treating source's opinion; and whether or not the treating source is a specialist. *Id.* at § 404.1527.

The ALJ properly considered these five factors. Dr. Merkel's opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not consistent with the other medical evidence. Dr. Merkel's medical evaluation was limited to a check-style form without any detailed explanations, which is not considered strong evidence. *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d. Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). Additionally, Dr. Merkel's evaluation is not consistent with the other medical evidence. Evidence in the medical record indicates that the plaintiff had remained stable while compliant with his medication regimen. The plaintiff reported that Depakote helped with his symptoms, and Dr. Merkel reported that the plaintiff's mental examination was normal while taking Depakote. Both Miller and Dr. Norrell reported Bowers had a normal mental status examination. Miller, in particular, indicated that Bowers'

ability to understand, remember, sustain concentration and persist were not significantly limited.

Secondly, the plaintiff contends that the ALJ did not properly consider all of the plaintiff's impairments in combination in an individualized manner. The plaintiff argues that the "reaction to the demands of work stress is highly individualized," and the mentally impaired may "cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day." (Pl.'s Br. 8.) However, the plaintiff does not explain how he, in particular, is unable to function effectively with work stress.

Additionally, there is evidence that the ALJ had considered the plaintiff's impairments in combination in his findings. Based on the entirety of the credible medical evidence of Bowers' physical and mental impairments, the ALJ assessed the plaintiff's residual functional capacity. The record reflects that the plaintiff could function despite his impairments. In his consultation with Miller, the plaintiff reported that he engaged in a number of day-to-day activities unimpaired by psychological ailments. The plaintiff cared for his personal needs, went to church, had a girlfriend, socialized with friends, managed money, helped his father with chores and enjoyed cooking.

Finally, the plaintiff contends that the ALJ improperly penalized the plaintiff for being unable to afford consultation from a neurologist. *See Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) ("'A claimant may not be penalized for failing to seek treatment she cannot afford.'") (quoting *Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir.1984)). The Social Security regulations direct claimants that a consultative examination may be ordered "[i]f your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled." 20 C.F.R. § 404.1517 (2012). A consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. This court's inquiry is thus limited to evaluating whether the ALJ had sufficient medical evidence to make a determination on Bowers' disability.

I find that the ALJ had sufficient evidence without seeking a neurological consultation. The plaintiff had an MRI of the brain performed in March 2010 which was normal. As discussed above, there was also sufficient evidence that the plaintiff was stable while compliant with his medical regimen, and his mental status examinations were consistently normal.

Case 1:12-cv-00002-JPJ-PMS   Document 18   Filed 08/24/12   Page 12 of 13   Pageid#: 668

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: August 24, 2012

/s/ James P. Jones
United States District Judge